Judge Tiffany M. Cartwright

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

FRANKLIN IKECHUKWU NWADIALO,

Defendant.

NO. CR23-5356 TMC

UNITED STATES' SENTENCING
MEMORANDUM

For over 15 years, Franklin Ikechukwu Nwadialo defrauded older, often widowed or divorced, victims for his own financial benefit. Through their fraud scheme, Nwadialo and his co-schemers deceived the victims into believing that they were in serious romantic relationships and needed to provide emergency money to help their "partner." In reality, the victims' "partners" were fake online personas used by Nwadialo and his co-schemers to swindle as much money as possible. In some instances, that meant the victims' life savings. By the time he was caught, Nwadialo and his co-schemers had caused at least eight victims to lose at least $3.5 million.

Given the gravity of this offense, the United States respectfully recommends the Court impose a custodial sentence of 60 months, to be followed by a three-year term of

United States' Sentencing Memorandum - 1
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

supervised release, order restitution to the known victims, and impose a mandatory special assessment of $100. Nwadialo appears before this Court for sentencing in the above-captioned case pursuant to his Rule 11(c)(1)(C) guilty plea on March 30, 2026 to wire fraud in violation of 18 U.S.C. §§ 1343 and 2.

## I.    BACKGROUND

### A.    Offense Conduct

Between at least November 2008 and December 2023, Nwadialo and his co-schemers sought to unjustly enrich themselves by committing a series of fraud, including romance scams. PSR ¶ 10; Plea ¶ 8(a). They targeted older, often widowed or divorced, individuals with savings as romantic interests on dating websites, such as Zoosk, Christian Café, and Match. PSR ¶ 11; Plea ¶ 8(b). To gain the romance victims' confidence and trust, they created false and fraudulent identities and backgrounds on the dating websites. PSR ¶ 11; Plea ¶ 8(b). When their victims requested to meet in person, they deflected and lied, instead communicating through dating websites, emails, WhatsApp, and other online means. PSR ¶ 11; Plea ¶ 8(b).

After gaining their victims' trust and confidence, Nwadialo and his co-schemers falsely and fraudulently claimed they needed monetary assistance from the romance scam victims. PSR ¶ 12; Plea ¶ 8(c). They directed the victims to send money to specific accounts, including offshore accounts controlled by Nwadialo and his co-schemers, under false and fraudulent pretenses. PSR ¶ 12; Plea ¶ 8(c).

As one example, around November 2020, Nwadialo and his co-schemers began communicating with Victim J.C., a widow, on Zoosk by falsely posing as "Antonio Giovanni." PSR ¶ 13; Plea ¶ 8(d). "Giovanni" claimed to be an officer in the U.S. military and used his purported profession as an excuse for being unable to meet J.C. in person. PSR ¶ 13; Plea ¶ 8(d). Instead, at "Giovanni's" urging, J.C. and "Giovanni" communicated over WhatsApp. PSR ¶ 13; Plea ¶ 8(d).

United States' Sentencing Memorandum - 2
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

After duping J.C. into believing she was in a romantic relationship, "Giovanni" induced J.C. to send him funds using false and fraudulent statements. For instance, he falsely claimed to have been fined $150,000 for violating the military's code of conduct by disclosing his location to J.C., manipulating J.C.'s trust and guilt and asking her to help pay this purported fine. PSR ¶ 14; Plea ¶ 8(e). The fine was fake. Giovanni was fake. The relationship was fake.

But the money was real. To assist "Giovanni," J.C. liquidated her deceased husband's retirement account, used her home as collateral for a loan, and ultimately sold her home. PSR ¶ 15; Plea ¶ 8(f). Nwadialo and his co-schemers caused J.C. to transfer over $2.4 million worth of bitcoin into accounts controlled by the co-schemers. PSR ¶ 15; Plea ¶ 8(f). Most of it—approximately $2 million—went directly to Nwadialo. PSR ¶ 15; Plea ¶ 8(f). After depleting J.C. of her savings, Nwadialo and his co-schemers falsely messaged J.C. that "Giovanni" had died while on a foreign mission. PSR ¶ 15; Plea ¶ 8(f).

As part of this fraud scheme, Nwadialo and his co-schemers also created a purported nonprofit organization, called Care Child Foundation, that they used to fraudulently obtain funds from victims. PSR ¶ 16; Plea ¶ 8(g). In materials filed with the Washington State Secretary of State, Care Child Foundation claimed its purpose was "helping autistic kids" and used victim N.F. and her address as its registered agent:

United States' Sentencing Memorandum - 3
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**B.    Nwadialo and His Co-Schemers Caused Victims Substantial Harm**

J.C. is one of many victims stuck with the financial and psychological repercussions of Nwadialo's scheme. In total, between approximately December 2019 and November 2024, Nwadialo and his co-schemers caused at least eight known victims to lose more than $3.5 million. PSR ¶ 18; Plea ¶ 8(i). Of this amount, Nwadialo personally obtained at least $2.3 million, which victims transferred to accounts and wallets Nwadialo controlled. PSR ¶ 18; Plea ¶ 8(i). These total losses of $3.5 million include the following losses, for which Nwadialo owes restitution:

United States' Sentencing Memorandum - 4
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Victim | Amount |
|--------|--------|
| J.C. | $2,868,472.62 |
| B.J. | $193,000 |

*See* Plea ¶ 12 & Ex. 1-8 (filed under seal). The government continues to assess the amount of restitution owing to three additional victims, M.H., L.B. and N.F., and hopes to supplement its calculations prior to or at sentencing, and if possible to reach agreement with the defense regarding restitution.

These substantial financial losses significantly impacted the victims. J.C. was not the only victim to lose their home: B.J. "sold my home and all furnishings and moved to a small 1-bedroom furnished apartment . . . to start all over to achieve some financial recovery." Others explained that the losses represented over 40 years of savings that will never be recovered and that they now face a trail of bills that they will never be able to pay back.

Beyond the financial losses, victims described the mental and emotional toll that Nwadialo's fraud scheme caused them. Victims described the insurmountable distress, anxiety, and depression they felt, including at least one who considered suicide after learning the truth about this fraud scheme. They also described the deep sense of shame that they felt at being deceived by someone they believed was a romantic partner, including one victim who was devastated to learn from the FBI that their romantic "partner" of about three years was, in reality, a scammer. Victims also described profound loss of trust and the isolation they suffered from being unable to share this trauma with friends, family, and mental health professionals because of fear that they would be ridiculed.

## C.  Procedural History

In December 2023, a grand jury indicted Nwadialo for 14 counts of wire fraud. The indictment charges a fraud scheme from December 2019 onward (Dkt. 1 ¶ 1). In

United States' Sentencing Memorandum - 5
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

November 2024, Nwadialo—a Nigerian national who resides in Nigeria—was arrested in Texas after he flew to the United States on temporary business and tourist visa. PSR ¶¶ 5, 47.[1]

Nwadialo asserted a duress defense and, in early 2026, began disclosing to the government materials in support of that claim. In those materials, which include an excerpt of an ex parte motion that the defense filed with the Court, Nwadialo said that, in or around May 2021, he was violently assaulted and blackmailed into participating in the charged fraud scheme by a separatist group in Nigeria. *See, e.g.*, Dkt. 36 (filed on or about Dec. 4, 2025) at 5-7.

Upon receiving those materials, the government conducted additional investigation, for the first time expanding the temporal scope to predate 2019. That investigation disproved Nwadialo's duress allegations by uncovering evidence that, contrary to his assertion, he had been engaging in online fraud since at least 2008—over a decade before he was allegedly blackmailed.

Among other legal process, the government obtained search warrants for Google accounts that used Nwadialo's known personal email addresses as their recovery email

---

[1] In the PSR, Nwadialo claimed he was flying to the United States to seek asylum. PSR ¶ 47. In a recorded interview with the FBI, however, Nwadialo stated he came to the United States to participate in a Nigerian cultural celebration and that he rescheduled his planned trip to the United States several months earlier so that he could run for office in Nigeria. *See* MJ26-5055, FBI affidavit ¶ 40. At no point during this interview did he claim to be concerned about his safety or the safety of his family. *Id.*

United States' Sentencing Memorandum - 6
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

addresses and were created before 2017. *See* MJ26-5043 & MJ26-5055. Within these Google accounts, Nwadialo used fake online personas to email potential romance scam victims and ask for financial assistance, similar to the charged scheme. For example, in November 2008, "Larry Rossi" emailed a potential victim, "I promise to always love you and always hold you in my heart. I will always be there for you":

**waking up**

| | |
|---|---|
| From: | Larry Rossi <lalxpp@gmail.com> |
| To: | rachel ▓▓▓▓ Redacted ▓▓▓▓ |
| Bcc: | lalxpp@gmail.com |
| Date: | Fri, 28 Nov 2008 05:35:05 -0800 |

Every day I wake up thanking God for you, truly feel blessed that you have become a part of my life now, and I cannot wait for the day that we can join our lives together

Sometimes I feel lost and out of touch, but when I remember you, I feel safe. Your thoughts soothe me. I could sit here and try to tell you just how I feel, but I can't find the words other than I am ecstatic and hoping to meet to meet you soon. I want to tell you that the love I have for you is undying. It is a love that is strong and enduring and will stand the test of time. I truly feel blessed that you have become a part of my life, and I cannot wait for the day that we can join our lives together.

I promise to always love you and always hold you in my heart. I will always be there for you when you need me, and I will love you no matter what life brings. You are my soul mate, and I vow to love you all eternity. I love you, baby

About a month later, "Larry Rossi" wrote to this same potential victim that he was asking for help because he "was only short of [his] tax payment before [he] could be cleared by the bank" and claimed he was in "custody right now and have been arrested and will have to face the law":

United States' Sentencing Memorandum - 7
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**MONEY CANT BUY YOU LOVE**

From: Larry Rossi <lalxpp@gmail.com>
To: rachel [Redacted]
Bcc: lalxpp@gmail.com
Date: Thu, 11 Dec 2008 01:40:19 -0800

The sadness of the night has made write you as my life has never remained the same after I told you about my recent problems last night, I called you more than 5 times after I went offline but you rejected my calls for the first time since we ever began this commitment, you were saying all sort of things.

You even linked me to being someone who will dupe your money or run away with your money but I believe that God is watching and judging every step we take or make and God knows I can never cheat or run away from him. Why have you decided to link me with such a thing? I took you as myself and shared everything with you.

I was only short of my tax payment before I could be cleared by the bank and that's why I had to share with you. moreover I have never asked you for money nor will I do if I have never been in such a problem, I am at the custody right now and have been arrested and will have to face the law. If you don't hear from me after today, don't forget I still love you till the end of time and no matter what you do in this life, don't forget money cannot buy you love or happiness. I promise you will never find a man who will give you such love and happiness like I have promised you. I wanted my life solely with you and our world to be a heaven but because you have chosen to listen to people who either have failed in their pursuit for love and happiness or people who you think laugh and smile with you but they don't like you. It is written in the Bible as saying, "the heart of man is desperately wicked, who can know it"

Bye for now love and I hope to get over this problem but being in jail wont help.

Larry

As another example, in February 2015, "Simon Rossi" wrote to his "[d]arling" for help because his uncle had purportedly been "transferred to a London hospital for an emmerency Surgery (sic)." "Simon Rossi" claimed the hospital had "demanded $800" which he could not send until he went back home and asked if the potential victim could help send the funds:

United States' Sentencing Memorandum - 8
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Re: Fwd: S. ROSSI 02/05/15 Itinerary

From:       Simon Rossi <simonnrossi@gmail.com>
To:         R [Redacted]
Bcc:        simonnrossi@gmail.com
Date:       Tue, 03 Feb 2015 05:12:40 -0800

Hi Darling,

My Uncle was transferred to a London hospital for an emmergency Surgery and they need me to assist them send some money urgently today. They have demanded for $800 which i cant send from here now till i am back home. I am sharing this with you because i know you can do it for me right now and tomorow or saturday i can transfer it back to you because here i cant leave the hotel or use my online banking because they need the money fast. His name is George Rossi and you can send him moneygram or western union to London, United Kingdom. Thats the emergency call i told you about. Call me if you can help me sort this out now.

Besides these emails engaging in romance fraud, the Google accounts also contained content confirming that they belonged to Nwadialo. For example, the "Larry Rossi" account included an email to Nwadialo's known personal email account (nwadialo.franklin[@]yahoo.com) in which its user, Nwadialo, sent a copy of an application listing Nwadialo's name, date of birth, email used on his U.S. visa application, and known telephone number:



United States' Sentencing Memorandum - 9
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Through this further investigation, additional losses were discovered from 2008 through December 2019, which are not included in the loss calculation. PSR ¶ 19.

After the government disproved core allegations underpinning Nwadialo's duress defense, he pled guilty.

## II.    SENTENCING GUIDELINES CALCULATIONS

### A.    Offense Level

The government agrees with the sentencing guideline calculations in the PSR. *See* PSR ¶¶ 24-38. The base offense level is 7. U.S.S.G. § 2B1.1(a)(1). Eighteen levels are added for a loss of more than $3.5 million. U.S.S.G. § 2B1.1(b)(1)(J). Nwadialo also receives a two-level enhancement because one or more victims suffered substantial financial hardship. U.S.S.G. § 2B1.1(2)(A)(iii). There is also a two-level enhancement because the offense involved a misrepresentation that Nwadialo was acting on behalf of a charitable organization. U.S.S.G. § 2B1.1(b)(9)(A). Nwadialo also receives an additional two-level enhancement because a substantial part of fraudulent scheme was committed outside the United States. U.S.S.G. § 2B1.1(b)(10)(B). He receives another two-level enhancement because he knew or should have known the victims of the offense included vulnerable victims. U.S.S.G. § 3A1.1(b)(1). Taking into account a three-level reduction for acceptance of responsibility, the total offense level is 30. *See* U.S.S.G. §§ 3E1.1.

### B.    Criminal History Category

Nwadialo's criminal history score is zero, and his Criminal History Category is I. PSR ¶¶ 39-41.

### C.    Guidelines Range

The guidelines sentencing range based on a total offense level of 30 and a Criminal History Category of I is 97-121 months.

## III.    FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence Nwadialo to a below-guidelines sentence of 60 months of imprisonment, a three-year term of supervised

United States' Sentencing Memorandum - 10
*United States v. Nwadialo*, CR23-5356 TMC

release, and restitution to the known victims. This sentence appropriately balances the factors set forth in 18 U.S.C. § 3553(a).

## A.      Nature and Circumstances, and Seriousness of the Offense

Nwadialo's offense was extremely serious and caused significant harm. For over 15 years, he and his confederates manipulated older, often widowed or divorced, individuals with savings into believing they had serious romantic partners for their own financial benefit. One victim was in a "relationship" for three years with Nwadialo's fake online persona before learning the truth from the FBI. Another victim was a widow who thought she had found love again following her husband's death. Instead, she lost her home and life savings and, even now, continues to suffer financially from the taxes, fees, and penalties she incurred from liquidating her accounts and home to help "Giovanni." Try as they might, those victims may never truly recover from Nwadialo's conduct.

Through this fraud scheme, between approximately December 2019 and November 2024, Nwadialo and his co-schemers caused at least eight victims to lose more than $3.5 million. Of this amount, Nwadialo personally obtained at least $2.3 million. These figures do not include recently discovered victims and losses from 2008 through 2019. Nevertheless, the agreed upon loss figures demonstrate the seriousness of the offense. Several victims have lost their life savings and others continue to face taxes, fees, and other penalties for liquidating their accounts, selling their homes, and obtaining loans. On top of the financial loss, victims have described the profound loss of trust that they suffered after learning that their romantic "relationship" turned out to be a scam and how that has isolated them from their friends and family.

## B.      History and Characteristics of the Defendant

Nwadialo's personal history includes both aggravating and mitigating factors. The length of time he has spent in this fraud scheme, over 15 years, is an aggravating factor. Similarly, after he was caught, Nwadialo initially attempted to avoid responsibility by

United States' Sentencing Memorandum - 11
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

claiming he began his fraud under duress. That assertion was false: he scammed victims for over a decade before the purported blackmail began.

These claims raise serious questions about Nwadialo's overall history and characteristics, and the credibility of his self-reporting. Still, he appears to have significant mitigating circumstances. Nwadialo described extensive childhood abuse, which included severe beatings by his adoptive father. PSR ¶¶ 48-52. Probation observed numerous scars on Nwadialo's arms, head, and chest. PSR ¶ 62. According to Probation, Nwadialo also has limited range of motion and constant pain in the right shoulder. PSR ¶ 63.

Furthermore, the defense provided support for some of Nwadialo's claims that he lived in a dangerous part of Nigeria, particularly given concerns about the group that purportedly targeted him. For example, Nwadialo asserted that one of his close friends was beheaded by that group, and Nwadialo reports that he then adopted his friend's four children. PSR ¶¶ 58-59. Public reports appear to confirm this individual was murdered and likely beheaded. *See* Dkt. 36 at n4-6. More generally, Nwadialo stated that, because of the military conflict in Nigeria, he has had many friends die. PSR ¶ 61. He previously provided public reports discussing other deaths near his home, which lends credence to the dangers he faced in Nigeria. *See* Dkt. 36 at n3 & n7.

**C.      Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

Nwadialo spent most of his adult life stealing millions of dollars from vulnerable victims from halfway around the world. When he got caught, he leveraged a few kernels of tragic truth into a falsified duress defense. Only when the government caught him in that second lie did he own up to his conduct.

That brazen, stubborn disregard for the law, and the colossal harm he caused, warrants the severe sanction of 60 months in custody. It is warranted as a consequence of his actions and to deter would-be fraudsters—Nwadialo and others—from similar

United States' Sentencing Memorandum - 12
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conduct. Specific deterrence is particularly important because when Nwadialo finishes his prison sentence, he will presumably return to Nigeria or another foreign country, making extradition uncertain should he perpetrate any future fraud on U.S. victims.

General deterrence is also particularly important in these circumstances. In an increasingly online world, romance scams are on the rise. Romance scam complaints to FBI spiked from under 18,000 in 2023 and 2024 to more than 23,000 in 2025. Fed. Bureau of Inv., Internet Crimes Report 25 (2025), https://www.ic3.gov/AnnualReport/Reports/2025_IC3Report.pdf (hereinafter, iC3 Report). Victims reported almost $1 billion in romance scam losses in 2025, a similarly dramatic increase from prior years. *Id.* at 26. And the victims are disproportionately elderly: in 2025, more than 10,000 of the romance scam reports, and more than a half-billion dollars in romance scam losses, were attributable to victims aged 60 or older. *Id.* at 45, 46. Of course, the actual losses are likely multitudes higher than those figures reported to FBI.

Five years in prison reflects the severity of the offenses and the devastation Nwadialo inflicted on victims.

## D.    Need to Protect the Public from Further Crimes

The need to protect the public from further crimes also supports the requested 60-month sentence. As noted above, when Nwadialo finishes his prison term, he will likely return to Nigeria or another country. Since he will no longer be subject to the U.S. justice system, extraditing him for any future crimes is uncertain at best. Consequently, a significant sentence is needed to disrupt Nwadialo's fraudulent activities and limit his contact with his co-schemers, thus ensuring that he cannot commit further fraud during his period of incarceration, and protecting the public from further fraud by Nwadialo when he completes his sentence.

United States' Sentencing Memorandum - 13
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**E.**     **Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

A 60-month sentence would not create any unwarranted sentencing disparities and is consistent with the limited comparators in this district. Nwadialo is the only defendant in this case. Due to the difficulty in identifying and apprehending online fraudsters, this district has seen only a handful of recent sentencings for defendants convicted of fraud that are comparable to the duration and depth of harm in this case.

Probation identified two recent cases in this district that also involved fraud perpetrated against vulnerable victims: (1) *United States v. Radcliffe*, CR25-222 LK; and (2) *United States v. Carty*, CR24-5250 TMC. In *Radcliffe*, the defendant defrauded an elderly widow with declining cognition of her home and life savings. *See* Probation's sentencing recommendation at 3. The loss amount in that case was about $515,000, and the guidelines range was 57 to 71 months with a criminal history category I. *Id.* In that case, the defendant received a sentence of 30 months in custody. *Id.*

In *Carty*, the defendant took advantage of a widow and fraudulently convinced her to sell her home, provide him with the proceeds, and provide him with her life savings. *Id.* The loss amount in that case was over $500,000, and the applicable guidelines range was 51 to 63 months with a criminal history category of I. *Id.*; CR24-5250 TMC at Dkt. 33 (Plea Agreement). The defendant received a sentence of 36 months in custody. CR24-5250 TMC at Dkt. 54 (Judgment).

Additionally, *United States v. Winslow*, CR25-5078 TMC, is another recent fraud case that also involved a vulnerable victim. In that case, the defendant abused his position of trust as a financial adviser to defraud his client, an elderly victim in cognitive decline. *See* CR25-5078 TMC at Dkt. 76 (Plea Agreement) & 87 (Gov't Sentencing Memo). The loss amount in that case was about $1.1 million, and the applicable guidelines range was 70-87 months with a criminal history category of I. *See id.* at Dkt. 89. The defendant received a sentence of 36 months in custody. *See id.* at Dkt. 90.

United States' Sentencing Memorandum - 14
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The aggravators described above warrant the more significant sanction in this case. A term of imprisonment of 60 months is warranted given the greater loss amount, the extended duration of Nwadialo's fraud scheme, the additional lies Nwadialo told after being apprehended for his crime, and the number of people he victimized. Similarly, a three-year term of supervision is appropriate here because, although it is likely that Nwadialo returns to Nigeria or another country after finishing his term of imprisonment, that is not a foregone conclusion. In case Nwadialo were to remain in the United States, supervision is needed to ensure that he successfully transitions back into the community given his long history of committing fraud.

### IV.   CONCLUSION

For all of the reasons set forth above, the government respectfully recommends the Court impose a custodial sentence of 60 months, to be followed by a three-year term of supervised release, order restitution to the known victims, and impose a mandatory special assessment of $100.

DATED this 15th day of June, 2026.

Respectfully submitted,

*/s/Sok Tea Jiang*
*/s/David T. Martin*
SOK TEA JIANG
DAVID T. MARTIN
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970
sok.jiang@usdoj.gov
david.martin2@usdoj.gov

United States' Sentencing Memorandum - 15
*United States v. Nwadialo*, CR23-5356 TMC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970